UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KIMBERLY LOVENDOSKY, ) | CASE NO. C04-2290-MJP-MAT |
| )  | |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY |
| JO ANNE B. BARNHART, Commissioner ) | DISABILITY APPEAL |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff Kimberly Lovendosky proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).

Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for an award of benefits.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1969.[1]  She completed the ninth grade with special education classes.  Plaintiff previously worked as a fast food cook, pizza maker, dishwasher, and maid.

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

Plaintiff filed an application for SSI benefits on September 17, 2001, alleging a disability onset date of June 15, 1995. However, her onset date became September 17, 2001, the date she protectively filed her application for SSI benefits. Plaintiff's application was denied initially and on reconsideration, and she timely requested a hearing.

ALJ M.J. Adams held a hearing on June 18, 2003. (AR 352-402.) The ALJ heard testimony from plaintiff and vocational expert Anthony Newbauer. On October 2, 2003, the ALJ issued a decision denying plaintiff's application for SSI benefits. (AR 14-23.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. (AR 5-8.) Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since September 17, 2001. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's bipolar disorder, anxiety related disorder, personality disorder not otherwise specified, and substance abuse disorder in remission. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that plaintiff could perform her past relevant work as a motel/hotel maid. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that

the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Because the ALJ found plaintiff capable of performing her past relevant work, step five was not addressed.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

In this case, plaintiff argues that she did not have past relevant work as a maid and that the ALJ erroneously rejected the opinions of examining psychiatrist Michael Clark, M.D., Ph.D., and examining psychologist Frank Hammer, Ph.D., and failed to account for the totality of the opinion of non-examining state agency psychologist Kristine Harrison. Plaintiff asserts that the overwhelming evidence demonstrates disability at step five, warranting an award of benefits. Alternatively, if the Court orders further proceedings, she asks that the ALJ be required to account for her seizures and exertional limitations in the RFC finding, as well as correct the above-described errors.

The Commissioner agrees that the ALJ erred, but maintains that the decision requires remand for further proceedings. The Commissioner asserts that, upon remand, the ALJ should reconsider the opinions of Drs. Clark, Hammer, Harrison, and treating psychiatrist Marilynn Strayer, M.D., reassess plaintiff's RFC and obtain vocational expert testimony based on complete hypothetical questions including all of plaintiff's limitations, reassess whether plaintiff can perform past relevant work, and proceed to step five.

The Court has discretion to remand for further proceedings or to award benefits. *See*

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

*Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77. For the reasons described below, the undersigned concludes that this matter should be remanded for an award of benefits.

Past Relevant Work

The ALJ found plaintiff capable of performing her past relevant work as a hotel/motel maid:

> The undersigned notes that an SVP-2 job requires training of short duration up to and including one month and an SVP-3 job requires over one month up to and including three months of training. As noted above the claimant testified that she performed the job as hotel/motel maid for three to four months a[t] one time [in 1994] and that she had performed the job previously [in 1992]. The vocational expert defined this job as unskilled (SVP-2) and he testified that his definition of the claimant's hotel/motel job is consistent with the information in the DOT (Social Security Ruling 00-4p). Since the claimant is limited to unskilled work with no dealings with the public and her past work as hotel/motel maid is unskilled with no public contact, the undersigned finds she is able to return to her past relevant work. Even giving the claimant the benefit of the doubt and finding that she should avoid heights, climbing and operating machinery, the expert witness testified that she could still perform the job of hotel/motel maid.

(AR 21.)

Past relevant work is work (1) performed within the past fifteen years, (2) constituting substantial gainful activity, and (3) lasting long enough for the individual to have learned how to perform the work. 20 C.F.R. §§ 416.960(b)(1), 416.965(a). If an individual worked only off-and-on for brief periods during the fifteen-year period, that work will generally not be considered past relevant work. 20 C.F.R. § 416.965. Also, average earnings of more than $500.00 per month ordinarily show that work is substantial gainful activity, while average monthly earnings below $300.00 generally show a claimant has not engaged in substantial gainful activity. 20 C.F.R. §

416.974(b). However, earnings are a presumptive, not a conclusive sign of whether a job constitutes substantial gainful activity. *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). The presumption shifts the step-four burden from the claimant to the Commissioner. *Id*. To meet that burden, the ALJ must point to substantial evidence, aside from earnings, that a claimant has engaged in substantial gainful activity. *Id*. (noting relevant factors pursuant to the regulations, including "the nature of the claimant's work, how well the claimant does the work, if the work is done under special conditions, if the claimant is self-employed, and the amount of time the claimant spends at work.") (citing 20 C.F.R. §§ 404.1573, 416.973).

Here, the parties agree that the ALJ did not consider whether plaintiff's pattern of working for brief periods of time precluded her work as a hotel/motel maid from being considered past relevant work, nor whether she had sufficient earnings to show she worked at the level of substantial gainful activity. However, while plaintiff maintains that the current record establishes that she did not have past relevant work, the Commissioner asserts that the ALJ should further consider this issue in accordance with the pertinent regulations.

Contrary to the Commissioner's contention, it is not necessary to remand this matter for further consideration at step four. The ALJ noted plaintiff's testimony that she worked as a maid for an indeterminate period of time in 1992 and for three to four months in 1994. (AR 21.) In 1992, plaintiff earned a total of $1055.68, $600.93 of which she earned working as a maid. (AR 73-74.) In order for that work to reach the $500.00 monthly level required to establish presumptive substantial gainful activity, plaintiff would have had to have performed that job for no more than one month. Yet, even if she had worked for only that single month, it would more accurately be described as one of many brief periods of employment, as discussed below. In 1994, plaintiff earned a total of $694.23 working for four different employers. Assuming she worked only three months as a maid that year, plaintiff's average monthly earnings totaled no more than $231.41 per month, creating a presumption that this work did not constitute substantial gainful activity.

Moreover, looking beyond plaintiff's position as a maid, the record does not reflect substantial gainful activity generally. In her best years, 1992 and 2000, plaintiff earned $1055.68 and $1188.00 respectively. (AR 71.) In the years between, plaintiff earned anywhere from $163.53 to $694.23 a year. *Id*.

Finally, the record does not contain substantial evidence, aside from earnings, that plaintiff engaged in any substantial gainful activity in the fifteen years prior to her alleged onset date. In fact, this appears to be a case in which plaintiff worked for only brief periods of time off-and-on in that fifteen year period. Indeed, the record show that, between 1987 and 2001, plaintiff worked for some twenty-two different employers, and was not employed in the years 1987, 1988, 1990, 1998, and 2001. (AR 71-76.)

In sum, it is hard to conceive how the Commissioner could find plaintiff to have performed substantial gainful activity in the fifteen years prior to her alleged onset date. Accordingly, remand for further proceedings at step four is not necessary. However, because the ALJ did not make an alternative finding at step five, the question remains whether remand for further proceedings is necessary.

Reconsidering Physicians' Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). *See also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (opinions of specialists given more weight than non-specialists). Where the opinion of the treating physician is contradicted, and the non-treating

physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). It is the sole province of the ALJ to resolve this conflict. *Id.*

As noted above, plaintiff argues that the ALJ erroneously rejected the opinions of examining physicians Clark and Hammer, and failed to account for the totality of the opinion of non-examining physician Harrison. Plaintiff cites the opinions of these physicians, along with the opinions of examining psychologist Michelle Shober, Psy.D., and treating physician Strayer, as constituting overwhelming evidence demonstrating her disability at step five. The Commissioner agrees that the ALJ failed to proffer sufficient reasons to reject the opinions of all but Dr. Shober, and maintains that the ALJ should reconsider the physicians' opinions.

1. <u>Dr. Clark</u>

Dr. Clark assessed plaintiff in January 2002. (AR 225-32.) He found as follows:

> The claimant acknowledged she probably needs help managing her own funds, although she stated she currently does this at this time. Interestingly, she stated while she does handle her finances, she laughed and stated, "Do I need help? . . . probably." Based upon her calculation performance in the formal mental status evaluation and some impulsivity, I could easily see that she could have problems managing her own finances.
>
> She does have some ability to perform simple and repetitive tasks, but based upon the fact that she was unable to perform an extremely basic function correctly in all respects, I doubt she would be able to perform even simple tasks as the basis of useful work. I suspect her error rate would be too high for most employers to tolerate. Likewise, I anticipate her ability to perform detailed and complicated tasks as quite low. She does have some history of difficulties with supervisors, coworkers, and the public, having had arguments resulting in her walking out. This may be a manifestation of her attention deficit disorder, although I cannot rule out that there were significant contributions at the time from her substance abuse. Nevertheless, she is at risk of having problems dealing with interpersonal relationships with others based upon her psychiatric illness.
>
> I suspect because of her frequent history of good and bad days, depending on her level of fatigue, she would not be able to perform work activities on a consistent basis or maintain regular attendance in the workplace, completing a normal workday or workweek without interruption from her psychiatric condition. She would be somewhat more susceptible to the usual stress encountered in competitive work, although her current active engagement in substance abuse and psychiatric treatment

would help to blunt her usual stress hyperreactivity.

(AR 232.)

The Commissioner describes Dr. Clark's opinion as tentative and equivocal. She notes, for instance, that Dr. Clark first found plaintiff capable for performing simple and repetitive work, and then expressed his doubt and suspicion relative to her capabilities. The Commissioner asserts that the ALJ is responsible for resolving such ambiguities. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

However, Dr. Clark's opinion is neither tentative, nor equivocal. Instead, as asserted by plaintiff, Dr. Clark appears to have given his best assessment as to whether plaintiff would be capable of working and concluded that she would not be able to do so.

2.  Dr. Hammer

Dr. Hammer examined plaintiff in June 2003. (AR 318-36.) Dr. Hammer found the prognosis for improvement in plaintiff's mental health "poor," and determined that "[s]he would have great difficulty adapting to a regular work situation because of her agitation, panic attacks, and depression." (AR 321.) He found a moderate limitation in plaintiff's ability to carry out simple instructions, seven marked limitations, including a limitation in her ability to understand and remember simple instructions, and extreme limitations in interacting appropriately with the public and in responding appropriately to work pressures in a usual work setting. (AR 322-23.)

The Commissioner raises several issues with Dr. Hammer's assessment. For the following reasons, none of these issues merit remand for further consideration.

First, the Commissioner notes that, while assigning plaintiff a Global Assessment of Functioning (GAF) of 42, indicating serious symptoms or impairments in social, occupational, or school functioning, Dr. Hammer failed to specify whether this level of impairment related to occupational functioning. (AR 321.) She adds that Dr. Hammer noted such non-occupational stressors as a difficult divorce, homelessness, and a history of special education classes. *Id*. However, Dr. Hammer clearly linked his GAF to a combination of these elements, citing

"Unemployment, difficult divorce, homelessness, history of special education, social isolation" just prior to assigning a GAF of 42. *Id*.

Second, the Commissioner notes that Dr. Hammer, who evaluated plaintiff in June 2003 – almost two years after the September 2001 alleged onset date, confined his assessment to the time of his evaluation. Dr. Hammer did indicate that the GAF of 42 was "[c]urrent." *Id*. His evaluation reasonably reflects his opinion of plaintiff at the time of the evaluation. Yet, there is nothing in the evaluation to reflect that Dr. Hammer felt that plaintiff's limitations were of recent origin or concern. In fact, he indicates his review of medical records dating back to October 2001, as well as consideration of plaintiff's long term psychiatric and medical history. (AR 318-19.) Moreover, as noted by plaintiff, the Commissioner does not suggest that there was a worsening of plaintiff's condition from her alleged onset date to the date of Dr. Hammer's evaluation.

Third, the Commissioner asserts that Dr. Hammer's comments that plaintiff would "need hands-on demonstrations to learn manual tasks" and "would not be able to make decisions in a work setting that affected other workers" illustrate his belief that plaintiff was not totally incapacitated. (AR 322.) She further notes that the term "marked" as defined on the form completed by Dr. Hammer means "[t]he ability to function is severely limited but not precluded." *Id*. However, plaintiff need not be deemed totally incapacitated in order to be found disabled pursuant to the Social Security Act, nor need her limitations be assessed as "severe," indicating "no useful ability to function[.]" *Id*.

Finally, the Commissioner takes issue with the hypotheticals propounded by plaintiff's counsel to the vocational expert as premised on Dr. Hammer's medical source statement. The Commissioner first notes that, in considering an individual with marked limitations in understanding and remembering short, simple instructions and in making judgments on simple, work-related decisions, the vocational expert responded that an individual would have difficulty in obtaining employment. (AR 397.) The Commissioner asserts that the ability to *obtain* employment is not a relevant consideration in determining disability. However, the Commissioner

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

selectively reads this testimony. In fact, the vocational expert had stated in response to a prior question that an individual might be capable of obtaining, but not maintaining jobs, and then stated that, for an individual with the marked limitations at issue, "it may even be difficult for that person to obtain employment." *Id*.

The Commissioner further notes that, while Dr. Hammer's definition of marked was as indicated above, plaintiff's counsel defined marked as "being more than half the time" in posing a hypothetical as to an individual with marked limitations in her ability to interact appropriately with supervisors and coworkers and an extreme limitation in her ability to respond appropriately to work pressures. (AR 397-98.) The Commissioner asserts that, given the different definitions, the vocational expert's response that such limitations would preclude employment is not premised on any evidence of record and the ALJ was, therefore, free to reject that response. However, even excluding consideration of this response, the vocational expert had already determined that, based on other limitations identified by Dr. Hammer, plaintiff would have difficulty maintaining or even obtaining employment. (AR 397.)

3. <u>Dr. Harrison</u>

In considering the opinion of Dr. Harrison, a non-examining physician, the ALJ stated:

> Another source of medical evidence is provided by the findings of fact made by State agency medical and psychological consultants. This evidence is treated as expert opinion evidence of nonexamining sources by the [ALJ]. Here, the consultants concluded that as of February 2002, the claimant's attention deficient hyperactivity disorder and mood disorder, not otherwise specified resulted in moderate limitation in social functioning and moderate difficulties in maintaining concentration, persistence and pace (Exhibit B10F).
>
> The State agency psychological consultants found that while the claimant would have difficulty with complex tasks, she is able to attend and persist on simple tasks. They found that the claimant should avoid intensive work with public. [stet] She was able to understand, remember and complete simple, familiar tasks (Exhibit B9F).

(AR 20.)

Plaintiff notes that Dr. Harrison also found two marked and five moderate limitations on a mental RFC assessment form. (AR 233-34.) Plaintiff argues that, although relying on Dr.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

Harrison's opinion, the ALJ failed to account for the totality of that opinion. *See Andrews*, 53 F.3d at 1044 ("The ALJ's hypothetical refers only to Andrew's social limitations and not to his moderate limitations in other areas.") Plaintiff notes the vocational expert's testimony that an individual with moderate limitations, defined as having problems up to one-third of the time, in three of the areas identified by Dr. Harrison – the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods – would be unable to maintain employment in an unskilled environment. (AR 396-97.)

The Commissioner asserts that, because the assessment form completed by Dr. Harrison does not define the term "moderate," the vocational expert's testimony is not premised on substantial evidence and, therefore, the ALJ was not bound to accept it. The Commissioner further notes that, while Dr. Harrison did include the above described moderate limitations on a check-box form, her narrative functional capacity assessment, in which she elaborated on those moderate limitations, does not support the vocational expert's presumed definition of moderate:

> . . . [C]laimant can:
>
> . . . Understand, remember and complete simple, familiar tasks such as household chores. The claimant's attention deficient and mood disorder will increase distractibility [stet] and make complex tasks difficult; complex tasks should not be expected of the claimant on a regular and consistent basis. The claimant manages ADLs, shops, and manages her own finances. She is able to attend to TV for up to 3 hours, attends AA and NA meetings, and does some craft work. The claimant's mental impairments limits her capacity for complex tasks, but she is able to attend and persist on simple tasks for two-hour periods through the work day/week.
>
> . . . Due to mood disorder and attention limitations she should avoid intensive work with public, but can manage brief, informal contact. She can work with a small group of others, evidence [stet] by her ability to live with roommate and manage support group meetings. She should not work in a setting where alcohol is served.

(AR 235-36.) This narrative section asks the physician to explain the summary conclusions in the check-box section in narrative form and to include any information clarifying a limitation or

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01 function. (AR 235.) The Commissioner asserts that, although it was reasonable to rely on Dr.
02 Harrison's narrative assessment, the ALJ should reconsider Dr. Harrison's opinion, particularly
03 addressing the summary conclusions on the check-box form as they relate to her narrative
04 assessment.

05 The ALJ should have either directly addressed the apparent disparity between the summary
06 conclusions and the narrative assessment, or contacted Dr. Harrison for clarification of her opinion
07 as to plaintiff's limitations. However, it nonetheless is not necessary to remand to allow the ALJ
08 further opportunity to address Dr. Harrison's opinion.

09 Dr. Harrison's narrative assessment indicates that, although plaintiff could not perform
10 complex tasks, she could perform "simple tasks for two-hour periods through the work
11 day/week." (AR 235-36.)[2] Yet, the basis for this conclusion is of questionable reliability given
12 the Commissioner's concession that several of the reasons provided – plaintiff's household chores,
13 cooking, and attendance at AA and NA meetings – were not sufficient to support the ALJ's
14 rejection of Dr. Clark's opinion. (*See* Dkt. 18 at 6.)

15 Moreover, despite her opinion that plaintiff could perform simple tasks, Dr. Harrison also
16 found the above-described moderate limitations, which, as noted by plaintiff, the vocational expert
17 concluded would preclude plaintiff's performance of even unskilled work. (AR 234-35; 396-97.)
18 Although the form completed by Dr. Harrison does not contain a definition of moderate, the
19 definition suggested by plaintiff's counsel and used by the vocational expert – up to one third of
20 the time – is not unreasonable, nor does it necessitate remand for further proceedings.[3]

---

[2] Although it is not clear, Dr. Harrison may have presumed that plaintiff would be able to take breaks after two-hour periods of work.

[3] It should be noted that, although the vocational expert changed his conclusion in response to the ALJ's definition of moderate as meaning "simply average," the vocational expert clarified that his definition of moderate "would not be considered average." (AR 398-401.)

01  4.  Dr. Shober

02  Dr. Shober examined plaintiff in March 2003 and assessed several moderate, marked, and
03  severe limitations. (AR 254-54.) Plaintiff does not contend that the ALJ erred in the treatment
04  of Dr. Shober's opinion, but cites the opinion as part of the overwhelming evidence supporting
05  her disability. The Commissioner asserts that the ALJ appropriately rejected the opinion for several
06  reasons, including the fact that her evaluation did not contain significant explanation of the bases
07  for her conclusions. Because plaintiff does not contest the ALJ's treatment of this opinion, it need
08  not be further addressed.

09  5.  Dr. Strayer

10  In considering the opinion of treating psychiatrist Dr. Strayer, the ALJ found as follows:

> In a letter dated June 17, 2003 addressed "To whom it may concern," Dr. Strayer, the claimant's treating psychiatrist since October 2001, opined that the claimant was disabled from performing substantial gainful activity. He further reported that the claimant had been honest about her drug and alcohol use and much of it had been in situations of desperation and self medication (Exhibit B17F). Dr. Strayer's opinion is not given significant weight as it relates to issues reserved to the Commissioner. Further, there is no supportive documentation for these opinions.

(AR 18.)

16  Plaintiff asserts that Dr. Strayer's opinion – finding her disabled from substantial gainful
17  activity (AR 337) – is part of the overwhelming evidence demonstrating her disability at step five.
18  The Commissioner found the ALJ's treatment of Dr. Strayer's opinion deficient, noting the failure
19  to provide specific and legitimate reasons to reject the opinion, as well as the inclusion of Dr.
20  Strayer's progress notes in the record.

21  However, because Dr. Strayer stated plaintiff "has *presently* been cooperative with
22  treatment and I believe she *is* disabled from substantial gainful activity[,]" the Commissioner avers
23  that Dr. Strayer clearly confined her opinion to the time it was written, in June 2003, and not to
24  the alleged onset of September 2001. *Id.* The Commissioner asserts that, even if Dr. Strayer's
25  opinion is credited, the onset of disability remains an outstanding issue. In response, plaintiff notes
26  that the Commissioner does not allege that her condition worsened from September 2001 until

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01 June 2003.

02       As with Dr. Hammer's opinion, there is nothing in the record to reflect that Dr. Strayer felt that plaintiff's limitations were of recent origin or concern. The terms "presently" and "is" do not necessarily limit the relevance of this opinion to a certain time period. If anything, the fact that Dr. Strayer began treating plaintiff shortly after her alleged onset date supports a conclusion that her opinion was inclusive of a larger time period. Also, as noted by plaintiff, the Commissioner does not suggest that there was a worsening of her condition.

Crediting Physicians' Opinions as True

      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required).

      However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato v. Commissioner of SSA*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for rejecting a physician's opinion were legally insufficient).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

The Commissioner argues that it is not clear the ALJ would be required to find plaintiff disabled if the physicians' opinions were credited as true. She identifies as outstanding issues: (1) the relative weight to be afforded these opinions; (2) whether plaintiff can perform any past relevant work and, (3) if not, whether she can perform other work in the economy at step five; (4) the need for additional vocational expert testimony based on improperly discredited evidence; and, (5) if plaintiff is found disabled, the onset date of her disability. The Commissioner avers that, because the relevant period at issue began almost four years ago, the opinion of a medical expert as to onset date would be appropriate.

However, the undersigned concludes that the physicians' opinions in this case should be credited as true. As described above, the evidence supports a conclusion that plaintiff had no substantial gainful activity upon which to make a step four finding and, therefore, the only question is whether she could be found capable of performing other work in the economy at step five.

The Commissioner concedes that the ALJ failed to proffer sufficient reasons for rejecting the opinions of Drs. Clark, Hammer, Harrison, and Strayer. For the reasons described above, the Commissioner fails to support her contention that the ALJ should reassess these opinions on remand. Moreover, the only one of these physicians who did not find plaintiff disabled – Dr. Harrison – found moderate limitations which the vocational expert concluded would preclude plaintiff's performance of even unskilled work. (AR 234-35; 396-97.) In light of the evidence in the record as a whole, the argument as to the definition of moderate used in reaching this conclusion is not sufficient to warrant remand for further administrative proceedings. Additionally, as treating and examining physicians, the opinions of Drs. Clark, Hammer, and Strayer are accorded greater weight than the opinion of nonexamining physician Dr. Harrison. *Lester*, 81 F.3d at 830. Finally, given the absence of evidence that plaintiff's condition at some point worsened, the Commissioner fails to support her contention that the disability onset date remains unclear. Therefore, taking the physicians' opinions as true, the record supports a finding of disability at step five beginning on September 17, 2001.

## **CONCLUSION**

Because the ALJ failed to provide legally sufficient reasons for rejecting the opinions of the various physicians, there are no outstanding issues to resolve, and it is clear from the record that the ALJ would be required to find plaintiff disabled, this matter should be remanded for an award of benefits. *McCartey*, 298 F.3d at 1076.

DATED this  15th  day of July, 2005.

Mary Alice Theiler
United States Magistrate Judge